## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SSL, L.L.C.,               )
                         )
             Plaintiff,   )
                         )
v.                         )    Case No. 04-1017-JTM
                         )    (Consolidated with
GARCIA-CHICOINE       )    Case No. 04-1189-JTM)
ENTERPRISES, INC., et al.,  )
                         )
           Defendants. )
_____ )

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Compel (Doc. 44), seeking to compel Plaintiff to fully answer Defendants' First Set of Interrogatories, First Set of Requests for Admission, and First Set of Requests for Production. Plaintiff, SSL, filed a response (Doc. 48), objecting to the discovery requests as irrelevant, overly broad, and unduly burdensome. Defendants[1] did not file a reply.

## BACKGROUND

G-C was a subcontractor on a road construction project in Garden City Kansas ("Garden City Job"). G-C contracted with Plaintiff SSL to provide G-C with a proprietary wall system, known as Mechanically Stabilized Earthwalls

---

[1] The Defendants in this case include Garcia-Chicoine Enterprises, Inc. ("G-C") and two of G-C's insurers, whose rights are derivative of G-C's rights. For the sake of simplicity, the Court will refer to Defendants collectively as G-C.

("MDE's"), which are used for highway interchanges, overpasses and bridges. MDE's apparently consist of exterior walls with interior mesh and select granular backfill.

G-C alleges that SSL, in its bid submitted to G-C for the Garden City Job, intentionally or negligently miscalculated the amount of special granular backfill by using a seventy percent ratio of wall height to soil reenforcement length as opposed to the 120 percent ratio specified by the Kansas Department of Transportation ("KDOT") bid documents, which SSL had in its possession at the time it submitted its bid to G-C.  G-C allegedly relied on SSL's backfill estimate in calculating its bid for the Garden City Job.

During the course of construction, G-C, who provided the backfill, realized that it did not allot enough backfill, and had to purchase extra.  KDOT refused to pay for the additional backfill, so G-C turned its attention to SSL, withholding payment on SSL's final invoice to compensate for the cost of the additional backfill.

G-C claims to have relied on the estimates provided in SSL's bid in determining how much backfill was necessary, despite the fact that the bid apparently contains a disclaimer instructing G-C that it should not rely on the figures provided.  G-C claims that it is the industry practice to use the backfill

estimates provided by the MDE provider because the construction of such walls is highly specialized and requires technical knowledge.

SSL filed suit against G-C for breach of contract.  G-C responded that it was excused from performance because SSL failed to fulfill its obligations under the contract.  G-C also filed counterclaims for breach of contract, negligent misrepresentation, and fraudulent misrepresentation.

During discovery, G-C filed its First Set of Interrogatories ("Interrogatories"), First Set of Requests for Admission ("RFA's"), and First Set of Requests for Production ("RFP's"), which are the subject of this motion to compel.  SSL objected to many of the requests.  The Court will consider the discovery requests individually and in groups, as judicial economy requires.

## DISCUSSION

A.    INFORMATION PROVIDED TO G-C BY SSL

G-C seeks substantial information regarding past dealings between G-C and SSL, including information regarding all prior dealings (Interrogatory 15 and RFP 6), dealings where SSL provided G-C with estimates for height:length ratio ("ratio estimates") and select granular backfill estimates ("backfill estimates") (Interrogatories 16 and 18, RFP's 7 and 8), and any inaccurate ratio or backfill estimates (Interrogatories 17 and 19).  SSL objected to these discovery requests as

3

irrelevant and unduly burdensome.  SSL also claims to have fully answered some of the requests.

1.     *Relevance*

       "Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is <u>any possibility</u> that the information sought may be relevant to the subject matter of the action." ***Audiotext Comm. Network, Inc., v. US Telecom, Inc.,*** No. 94-2395, 1995 WL 625962, at *3 (D. Kan Oct. 5, 1995) (emphasis added) (citing ***Smith v. MCI Telecomm. Corp.***, 137 F.R.D. 25, 27 (D. Kan. 1991)).  "When the discovery sought appears relevant on its face, the party resisting the discovery bears the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." ***Dean v. Anderson***, No. 01-2599, 2002 WL 1377729, at *2 (D. Kan. June 6, 2002).  "The party opposing discovery cannot simply make conclusory allegations that the request is irrelevant, but must specifically show how each discovery request is irrelevant."  ***Audiotext***, No. 94-2395, 1995 WL 625962, at *3 (citations omitted).

4

On the other hand, "When 'relevancy is not apparent, it is the burden of the party seeking discovery to show the relevancy of the discovery request.'" ***Dean***, 2002 WL 1377729, at *2 (citing ***Steil v. Humana Kansas City, Inc.***, 197 F.R.D. 442, 445 (D. Kan. 2000)).  A request for discovery will ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action.  ***Haggard v. Standard Register Co.***, No. 01-2513, 2003 WL 365955, at *3 (D. Kan. Jan. 21, 2003) (citations and quotations omitted).

SSL claims that the information it provided to G-C, *i.e.,* prior bids submitted by SSL to G-C, is not relevant to G-C's breach of contract counterclaim because it is inadmissible parole evidence under the Kansas Uniform Commercial Code.[2] K.S.A. 84-1-101 *et seq.*  SSL further argues that the information is irrelevant to G-C's misrepresentation counterclaims because no bids by SSL, prior to the one at issue in this case, were accepted by G-C and such unaccepted bids do nothing to prove that G-C's alleged reliance upon SSL's estimates was reasonable.

The Court finds that the information is, at a minimum, relevant to G-C's misrepresentation counterclaims.  While the Court is inclined to agree that at least some of the information requested may not be relevant to prove <u>justifiable reliance</u>

---

[2] The Court does not decide whether the information requested is admissible parole evidence under the Kansas UCC because the Court finds that the discovery is relevant to G-C's misrepresentation claims.  *See infra*.

by G-C, the information may be relevant to prove that SSL intended for G-C to rely on its estimates, which is a necessary element of G-C's misrepresentation counterclaims.  *See* ***Wilkinson v. Shoney's, Inc.***, 269 Kan. 194, 218 (Kan. 2000) (listing intent to influence the recipient of the information as a necessary element of negligent misrepresentation); ***Slaymaker v. Westgate State Bank***, 241 Kan. 525, 531 (Kan. 1987) (listing "intent to deceive" as a necessary element of fraudulent misrepresentation).  G-C claims that the information is likely to show that SSL always provided accurate ratio and backfill estimates in all of its bids to G-C, which would tend to show that SSL intended for such figures to be relied upon by G-C.

The Court finds that information regarding SSL's prior bids to G-C is discoverable because the information may be relevant to prove that SSL intended to induce G-C to rely on its ratio and backfill estimates.

2.      *Unduly Burdensome*

The burden is on the objecting party to show that responding to the discovery is unduly burdensome, ***Snowden v. Connaught Lab., Inc.***, 137 F.R.D. 325, 3325 (D. Kan. 1991), unless the requested discovery is overly broad on its face.  ***Stoldt v. Centurion Indus.***, No. 03-2634, 2005 U.S. Dist. LEXIS 2343, at *7 (D. Kan. Feb. 3, 2005).  The Court will balance the burden on the objecting party

against the benefit to the discovering party of having the information." ***Hoffman***

***v. United Telecomms., Inc.***, 117 F.R.D. 436, 438 (D. Kan. 1987).  Any objections

that discovery is unduly burdensome or overly broad must contain a factual basis

for the claim (*i.e.*, time it would take to collect the evidence requested or exorbitant

costs of retrieving the information requested).  *See **Daneshvar v. Graphic***

***Technology, Inc.***, No. 97-2304, 1998 WL 726091, at *1 (D. Kan. Oct. 9, 1998).


SSL argues that providing prior bids would be unduly burdensome because

(1) SSL has already admitted that prior bids from SSL to G-C contained backfill

estimates and (2) G-C should already have those bids in its possession.  The Court

finds these arguments unpersuasive.

First, SSL's admission that all prior bids contained backfill estimates, does

not eliminate the need for this discovery.  As previously stated, the accuracy of the

estimates, a fact that SSL has not admitted, may also be relevant, at a minimum, to

prove that SSL intended for G-C to rely on such estimates.

Secondly, the fact that G-C may already have these bids in its possession is

not a proper objection to disclosure.  *See **FDIC v. Renda***, 126 F.R.D. 70, 72 (D.

Kan. 1989) ("Even if the plaintiffs are in possession of certain documents which

they requested from the defendants, the plaintiffs are entitled to review those

documents which are in the defendants' control."); ***Walt Disney Co. v. DeFabiis***, 168 F.R.D. 281, 284 (D. Cal. 1996) (requiring defendant to respond to plaintiff's discovery request "regardless of whether he believes plaintiff already has those documents").[3]  Thus, withholding documents on this basis is inappropriate.

The court does note, however, that discovery should not be used simply to create additional work and expense for the opposing party.  Thus, to the extent that G-C has a list of former bids which it has received from SSL, it should provide that information to SSL to enable SSL to more efficiently search its prior records in complying with the document request.

## 3.   *Fully Answered Interrogatories*

SSL claims that it has fully answered Interrogatories 17, 18, and 19.  These Interrogatories seek identification of bids from SSL to G-C containing inaccurate ratio and backfill estimates and identification of all bids where SSL provided G-C with "neat line" backfill estimates.

---

[3] Prior to the 1970 amendments to the Federal Rules of Civil Procedure, courts frequently declined to compel parties to respond to requests for production of documents where the requesting party was in possession of the documents.  *See, e.g., **Pope v. Ungerer & Co.**,* 49 F.R.D. 300, 303 (D. Ga., 1969) (requiring a showing by the requesting party that requested documents were not in his possession or reasonably available to him before compelling the other party to produce the requested documents).  Those decisions were based upon the "good cause" requirement of Rule 34, which was removed by the 1970 amendments.  *See* Fed. R. Civ. P 34 Advisory Committee Notes (1970 Amendments).  Since 1970, courts have not required proof of lack of possession prior to compelling disclosure.

SSL responded to Interrogatories 17 and 19, which seek identification of any bids from SSL to G-C containing inaccurate ratio or backfill estimates, respectively, by stating that, because the bids from SSL to G-C were never accepted, SSL has no way of knowing if such estimates were accurate.  The Court agrees with SSL that this constitutes an adequate answer to Interrogatories 17 and 19.[4]

SSL responded to Interrogatory 18, which seeks identification of all past bids where SSL provided GC with "neat line" backfill estimates, by stating that it does not provide "neat line" backfill estimates, but instead it provides "gross" backfill estimates.  Because the Court is ordering SSL to disclose all of its previous bids to G-C, this issue is moot.  G-C will receive all of the SSL's bids to G-C, necessarily containing all backfill estimates in whatever form they were given.  Accordingly, requiring SSL to answer this separate interrogatory is unnecessarily duplicative.

The Court finds that SSL has adequately responded to Interrogatories 17, 18, and 19.  However, the Court orders SSL to supplement its responses to

---

[4] Though this information is relevant, the Court holds that these discovery requests are unnecessarily duplicative.  The Court has already determined that SSL must disclose all prior bids it submitted to G-C.  G-C should therefore be able to compare estimates obtained from these documents and responses to the amounts of backfill actually used in those jobs to determine the accuracy of such estimates.

Interrogatories 15 and 16 and RFP's 6, 7, and 8, in accordance with this Order.

B.   INFORMATION PROVIDED TO OTHER CONTRACTORS
     BY SSL

Interrogatories 20 and 21 seek identification of all past dealings between SSL and other contractors where it has provided inaccurate ratio or backfill estimates, respectively.  SSL objects to the Interrogatories on the grounds that they are irrelevant, unduly burdensome, and that they have been fully answered.

1.   *Relevance*

The Court has already found that similar estimates provided to G-C may be relevant, at a minimum, to prove that SSL intended to cause G-C to rely on the ratio and backfill estimates provided by SSL.  *See supra* Part A.1.  Court finds that such estimates made to other contractors may also be relevant to prove SSL's intent.  The fact that such estimates were not made to G-C does not significantly diminish the value of the evidence to prove SSL's intent to cause reliance by the recipient.  Evidence that SSL provided accurate estimates in all of its bids to contractors would tend to show that SSL intended its contractors, including G-C, to rely on such estimates.

2.   *Unduly Burdensome*

SSL states that it provides 25 to 35 bids each month and that it currently has approximately 80 boxes of documents related to past jobs in storage, which are not

kept in any organized manner.  Furthermore, such boxes contain all documents

related to the jobs, not just bids.   Though SSL does not specify how much time it

would take to retrieve all of the responsive data, the Court can reasonably infer that

the time would be substantial.  The Court further notes that G-C's interrogatories

are inexplicably without temporal limits.  Although the information is relevant, the

Court finds that Interrogatories 20 and 21, as drafted, are unduly burdensome.

Accordingly, G-C's motion to compel responses to these interrogatories are

DENIED.

C.     REQUESTS FOR ADMISSION

        G-C's motion to compel seeks to require SSL to provide complete answers

to G-C's RFA's 7 through 17.[5]  SSL objects to all of these RFA's as irrelevant and

unduly burdensome, and object to some of these RFA's as vague.  Notwithstanding

those objections, SSL also claims to have fully answered G-C's RFA's.

        Fed. R. Civ. P. 36(a) provides that parties may make requests for admission

regarding matters within the scope of Rule 26 (b)(1).  The recipient of such a

request provide a written answer or objection to the requesting party.  *Id*.

                If objection is made, the reasons therefor shall be stated.

---

        [5] Technically, G-C's challenge to SSL's responses to the RFA's should be framed
as a motion to determine the sufficiency of SSL's answers and objections.  The Court will
treat this portion of G-C's motion to compel as a motion to determine the sufficiency of
SSL's answers and objections under Fed. R. Civ. P. 36(a).

> The answer shall specifically deny the matter or set forth
> in detail the reasons why the answering party cannot
> truthfully admit or deny the matter.  A denial shall fairly
> meet the substance of the requested admission, and when
> good faith requires that a party answer or deny only a
> part of the matter of which an admission is requested, the
> party shall specify so much of it as is true and qualify or
> deny the remainder.  An answering party may not give
> lack of information or knowledge as a reason for failure
> to admit or deny unless the party states that the party has
> made a reasonable inquiry and that the information
> known or readily obtainable by the party is insufficient to
> enable the party to admit or deny.

*Id*.

The subject matter of the RFA's is identical to the subject matter of the Interrogatories and RFP's.  The Court has already determined that these subjects are within the scope of discovery pursuant to Fed. R. Civ. P. 26(b)(1), *See supra* Parts A and B, and the same standard applies here.  *See* Fed R. Civ. P. 36(a) (adopting the scope of Rule 26(b)(1) for RFA's).  Thus, the Court will not revisit those issues here.  The Court will consider objections regarding burden and vagueness and the sufficiency of SSL's answers.

*1.     RFA's 7, 8, 11, 14, and 16*

These RFA's seek admission that SSL had many past dealings with G-C (RFA 7), that SSL provided many ratio estimates to G-C (RFA 8), that SSL provided many backfill estimates to G-C (RFA 11), that SSL provided many ratio

estimates to other contractors (RFA 14), and that SSL provided many backfill estimates to other contractors (RFA 16).

SSL first objects that the word "many" is ambiguous and precludes a complete admission.  However, SSL responded to these RFA's by admitting that it has submitted bids to G-C, which were not accepted, and that it provides with its bids, to G-C and other contractors, "gross" backfill estimates based upon a 70 percent ratio of wall height to soil reenforcement length.

 "A party is not required to respond to a request containing vague or ambiguous statements."  *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 107–108 (D. Del. 2002) (citing 7 James Moore, et. al. Moore's Federal Practice § 36.10[6] (3d ed. 1997)).  The Court agrees with Defendants the term "many" is ambiguous.  Though the courts have not previously enunciated a clear standard of what constitutes objectionable vagueness, the Court is not without guidance.  Court have found that RFA's should be simple and concise such that they can be answered with an absolute minimum of qualification or explanation. *See Jones v. Rent a Center, Inc*., Case No. 01-2320, 2002 WL 924833, at *1 (D. Kan. 2002).  Furthermore, responding parties should not be forced to speculate in answering a question. *See Schartz v. Unified School Dist. No. 512*, Case No. 95-2491, 1996 WL 686862, at *3 (D. Kan. 1996) (finding the terms "process," "he,"

13

and "complaints" ambiguous because, in context, they required speculation as to which process, person, and complaints were being inquired about).

The term "many" certainly lacks exactness, even when taken in context. For example, G-C's idea of "many" bids may be vastly different than "many" bids for SSL. A jury or judge may have yet a different concept of "many" than any of the parties. Thus, the Court is unwilling to require SSL to admit or deny these RFA's without qualification. The Court finds that a reasonable qualification is necessary and holds that SSL's admission that it has provided various bids and estimates (*i.e.* more than one) to G-C and other contractors is sufficient with regard to numerosity.[6]

The Court further finds SSL's answers to these RFA's to be sufficient with respect to subject matter. SSL has essentially admitted that it provides backfill estimates in its bids and that it uses a 70 percent ratio in calculating such backfill estimates, effectively denying the remainder of the RFA's. SSL's answers to RFA's 7, 8, 11, 14, and 16 are sufficient. G-C's motion is DENIED with respect to these requests.

2.    *RFA's 9, 12, 15, and 17*

---

[6] The Court declines to require Defendants to provide a more exacting number, at least in part, because the Court has ordered Defendants to provide Plaintiff with all of its bids to G-C. Thus, G-C can determine exactly how many bids are involved.

14

These RFA's seek admission that G-C and other contractors relied on SSL's backfill and ratio estimates in many instances.  In addition to objections, SSL answered that it could not admit or deny the admissions because it has no way of knowing what G-C or any other contractors relied on for their ratio or backfill estimates.

While SSL does not make an explicit statement, as required by Fed. R. Civ. P. 36, that it conducted a reasonable inquiry to discover the information necessary to admit or deny the request,  *See C.R.K. v. U.S.D. 260,* Case No. 99-1301, 2000 WL 1477194, at *1 (D. Kan. 2000) (citing Rule 36 for the proposition that a failure to admit or deny an RFA is insufficient unless the responding party states that he has made a reasonable inquiry), the Court finds that a reasonable inquiry would not allow SSL to answer these RFA's.

It seems clear that, for bids that were not accepted, SSL would not have any way of knowing whether it's estimates were accurate because it did not supply the MDE's or otherwise work on the project.  Furthermore, SSL did not apparently supply it's own backfill for projects in which it did supply the MDE's, and thus, would not have first-hand knowledge of whether its estimates were accurate in those instances.  To answer these RFA's, SSL would be forced to call the general contractor of every job for which it ever submitted a bid, attempt to obtain the

quantity of backfill used on that job and the ratio required, and compare those figures with the estimates in the bid to determine whether they were accurate.  This is not a reasonable inquiry.

Thus, the Court finds SSL's answers to RFA's 9, 12, 15, and 17 to be sufficient and DENIES G-C's motion with respect to those requests.

3.    *RFA's 10 and 13*

These RFA's seek admission that SSL never provided any inaccurate ratio or backfill estimates to G-C.  SSL responded that it did not know whether such estimates were accurate because the bids containing the estimates were never accepted.  Again, in order to answer these RFA's, SSL would have to contact the general contractor who was awarded the contract (which may or may not have been G-C), request information regarding backfill amounts and ratio used, and compare those figures to SSL's estimates.  Furthermore, this all assumes a similar MDE system was used in project such that a reasonable comparison is possible.  This is not, at this point, a reasonable inquiry.

Thus, the Court DENIES G-C's motion with respect to RFA's 10 and 13.

**CONCLUSION**

The Court GRANTS in part and DENIES in part G-C's motion in accordance with this Order.  Where the Court has ordered SSL to supplement its responses, the Court orders SSL to provide such supplemental responses within **20 days** of this Order.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas on this 24th day of August, 2005.

    s/ Donald W. Bostwick
DONALD W. BOSTWICK
United States Magistrate Judge

17